UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------------X
SAKIA FLETCHER,

                                Plaintiff,

               -against-

MEDGAR EVERS COLLEGE, CITY UNIVERSITY OF NEW YORK,
RUDOLPH CREW, *in his capacity as President of Medgar Evers College*,
FELIX V. MATOS RODRIGUEZ, *in his capacity as Chancellor of the
City University of New York*, ALEXIS MCLEAN, *individually and in her
Capacity as Dean of Medgar Evers College*, JOHNATHON P.
HARDAWAY, *individually and in his capacity as Chief Legal Officer for
Medgar Evers College*, and COUNCILWOMAN LAURIE CUMBO

                            Defendants.
------------------------------------------------------------------------------------X

Docket No. 20-CV-4163
(VEC) (SDA)


# MEMORANDUM OF LAW OF
## DEFENDANTS DR. RUDOLPH CREW AND JOHNATHON HARDAWAY
## IN SUPPORT OF THEIR MOTION TO DISMISS


**LAMB & BARNOSKY, LLP**
*Attorneys for Defendants*
534 Broadhollow Road, Suite 210
P.O. Box 9034
Melville, NY 11747-9034
(631) 694-2300


Matthew J. Mehnert, Esq.
Joshua S. Sprague, Esq.
*Of Counsel*

## TABLE OF CONTENTS

**Pages**

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ..........................................................................1

STATEMENT OF FACTS ..................................................................................2

    Community Board 9 Meeting And Plaintiff's Suspension ..................................3

    The Disciplinary Proceeding ..............................................................................3

    Plaintiff's FOIL Requests and MEC's Responses ..............................................4

ARGUMENT .......................................................................................................5

    I.     ALL CAUSES OF ACTION AGAINST DR. CREW AND HARDAWAY IN THEIR OFFICIAL CAPACITY SHOULD BE DISMISSED AS REDUNDANT OF THE CLAIMS AGAINST MEC/CUNY ...............................6

    II.    PLAINTIFF'S CLAIMS AGAINST DR. CREW AND HARDAWAY UNDER 42 U.S.C. § 1983 AND RELATED NEW YORK STATE CONSTITUTIONAL PROVISIONS FAIL AS A MATTER OF LAW AND SHOULD BE DISMISSED ........................................................................8

        A.    The Claims Under The New York State Constitution Are Redundant..........9

        B.    Plaintiff Fails To State A Claim For First Amendment Retaliation .............10

        C.    Plaintiff Fails To State A Plausible Violation of Due Process ....................13

        D.    Plaintiff Fails To Allege A Claim Against Dr. Crew And Hardaway For The Manufacturing Of False Evidence In Violation Of The 14 Amendment.................................................................................................15

    III.   THE STATE LAW CLAIMS FOR ABUSE OF PROCESS, TORTIOUS INTERERENCE WITH CONTACT AND BREACH OF CONTRACT ARE FATALY FLAWED AS TO DR. CREW AND HARDAWAY ..........................15

        A.    Plaintiff's State Law Abuse Of Process Claim Fails As A Matter Of Law ............................................................................................................16

        B.    Plaintiff Fails To Plausibly Plead A Claim For Tortious Interference With Contract Against Dr. Crew And Hardaway .........................................18

C.     A Breach of Contract Claim Has Not Been Adequately Pled As To
       Hardaway And Dr. Crew ............................................................................22

IV.    THE CAUSE OF ACTION FOR VIOLATIONS OF THE NEW YORK
       FREEDOM OF INFORMATION LAW SHOULD BE DISMISSED AS TO
       DR. CREW AND HARDAWAY .........................................................................23

CONCLUSION ...................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Allen v. Antal*,
   665 Fed. App'x. 9 (2d Cir. 2016) ............................................................................9

*Attallah v. New York College of Osteopathic Medicine*,
   94 F. Supp. 3d 448 (E.D.N.Y. 2015) ...................................................................14

*B & M Linen Corp. v. Kannegiesser USA, Corp.*,
   679 F. Supp. 2d 474 (S.D.N.Y. 2010).................................................................22

*Back v. Hastings on Hudson Union Free Sch. Dist.*,
   365 F.3d 107 (2d Cir. 2004) ........................................................................... 10-11

*Bahr v. City Univ. of New York/York College*,
   2016 WL 8711060 (E.D.N.Y. Dec. 9, 2016) ......................................................11

*Bd. of Regents of State Colleges v. Roth*,
   408 U.S. 564 (1972).............................................................................................13

*Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, N.Y.*,
   111 F. Supp. 3d 459 (S.D.N.Y. 2015).................................................................9

*Boehner v. Heise*,
   734 F. Supp. 2d 389 (S.D.N.Y. 2010)............................................................ 20-21

*Camacho v. Brandon*,
   317 F.3d 153 (2d Cir. 2003) ...............................................................................10

*Candelaria v. Cunningham*,
   2000 WL 798636 (S.D.N.Y. June 20, 2000) .......................................................7

*Citizens United v. Schneiderman*,
   882 F.3d 374 (2d Cir. 2018) .................................................................................5

*Clean Cloal Techs., Inc. v. Leidos, Inc.*,
   377 F. Supp. 3d 303 (S.D.N.Y. 2019).................................................................21

*DiPizio v. Empire State Dev. Corp.*,
   745 Fed. Appx. 385 (2d Cir. 2018).......................................................................5

*Emmons v. City Univ. of New York*,
   715 F. Supp. 2d 394 (E.D.N.Y. 2010) ..................................................................6

*Escobar v. City of New York*,
   2007 WL 1827414 (E.D.N.Y. June 25, 2007) ...................................................................11

*Falcon v. City Univ. of New York*,
   2016 WL 3920223 (E.D.N.Y. July 15, 2016)...................................................11-12, 14-15

*Finley v. Giacobbe*,
   79 F.3d 1285 (2d Cir. 1996) .............................................................................................13

*Fox v. State Univ. of New York*,
   497 F. Supp. 2d 446 (E.D.N.Y. 2007) ...............................................................................7

*Garrido v. Coughlin*,
   716 F. Supp. 98 (S.D.N.Y. 1989)......................................................................................13

*Gilman v. Marsh & McLennan Companies, Inc.*,
   868 F. Supp. 2d 118 (S.D.N.Y. 2012)...............................................................................18

*Gilmore v. Bouboulis*,
   2016 WL 4532146 (N.D.N.Y. Aug. 29, 2016) ...................................................................9

*Goonewardena v. New York*,
   475 F. Supp. 2d 310 (S.D.N.Y. 2007)......................................................................7, 13-14

*Grullon v. City of New Haven*,
   720 F.3d 133 (2d Cir. 2013) .............................................................................................11

*Guan N. v. NYC Dep't of Educ.*,
   2014 WL 1275487 (S.D.N.Y. Mar. 24, 2014) ...............................................................6-7

*Guichard v. Town of Brookhaven*,
   26 F. Supp. 3d 219 (E.D.N.Y. 2014) .................................................................................7

*Hayes v. Perotta*,
   751 F. Supp. 2d 597 (S.D.N.Y. 2010).........................................................................24-25

*Kanderskaya v. City of New York*,
   11 F. Supp. 3d 431 (S.D.N.Y. 2014).................................................................................7

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006) .............................................................................................19

*Klass v. Frazer*,
   290 F. Supp. 2d 425 (S.D.N.Y. 2003)..............................................................................16

*Koret, Inc. v. Christian Dior, S.A.*,

161 A.D.2d 156 (1st Dep't 1990) .................................................................................19

*Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC*,
2013 WL 417406 (S.D.N.Y. Feb. 4, 2013) .................................................. 16-17

*Kretzmon v. Erie Cty.*,
2013 WL 636545 (W.D.N.Y. Feb. 20, 2013) .............................................................23

*LaFaro v. New York Cardiothoracic Grp., PLLC*,
570 F.3d 471 (2d Cir. 2009) ............................................................................ 5-6

*Lima v. New York City Dep't of Educ.*,
2013 WL 3325002 (E.D.N.Y. July 1, 2013) .......................................................13

*Lluberes v. City of Troy*,
2014 WL 1123413 (N.D.N.Y. Mar. 21, 2014) ..................................................24

*Mahone v. City of New York*,
2014 WL 1407702 (S.D.N.Y. Apr. 11, 2014).....................................................10

*Medtech Prods. Inc. v. Ranir, LLC*,
596 F. Supp. 2d 778 (S.D.N.Y. 2008)..................................................................20

*Minetos v. City Univ. of New York*,
925 F. Supp. 177 (S.D.N.Y. 1996)............................................................... 19-20

*Morales v. New York*,
22 F. Supp. 3d 256 (S.D.N.Y. 2014).....................................................................15

*Morris v. New York City Employees' Ret. Sys.*,
129 F. Supp. 2d 599 (S.D.N.Y. 2001).....................................................................14

*Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*,
14 F. Supp. 3d 191 (S.D.N.Y. 2014)..........................................................16, 18

*Nickerson v. Commc'n Workers of Am. Local 1171*,
2005 WL 1331122 (N.D.N.Y. May 31, 2005)...................................................17

*Nu-Life Constr. Corp. v. Bd. of Educ. of City of New York*,
204 A.D.2d 106 (1st Dep't 1994) .........................................................................20

*Oberstein v. SunPower Corp.*,
2010 WL 1705868 (E.D.N.Y. Apr. 28, 2010) .................................................23

*Perma Pave Contracting Corp. v. Paerdegat Boat & Racquet Club, Inc.*,
156 A.D.2d 550 (2d Dep't 1989) .........................................................................23

- v -

*Phillips v. Cty. of Orange*,
    894 F. Supp. 2d 345 (S.D.N.Y. 2012)................................................................6

*Plasticware, LLC v. Flint Hills Res., LP*,
    852 F. Supp. 2d 398 (S.D.N.Y. 2012)..........................................................19, 22

*Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*,
    894 F. Supp. 2d 288 (S.D.N.Y. 2012)............................................................19

*Sullivan v. Metro. Transit Auth. Police Dep't*,
    2017 WL 4326058 (S.D.N.Y. Sept. 13, 2017)...............................................9, 17

*Washington v. Westchester Cty. Dep't of Corr.*,
    2015 WL 408941 (S.D.N.Y. Jan. 30, 2015) ....................................................15

*Yip v. Bd. of Trustees of State Univ. of New York*,
    2004 WL 2202594 (W.D.N.Y. Sept. 29, 2004) ..........................................24-25

*Yucyco, Ltd. v. Republic of Slovenia*,
    984 F. Supp. 209 (S.D.N.Y. 1997)..................................................................23

## Statutes and Regulations

28 U.S.C. § 1367.........................................................................................16

42 U.S.C. § 1983 ..................................................................................1, 8-11

N.Y. C.P.L.R. § 217....................................................................................24

N.Y. C.P.L.R. § 7803..................................................................................14

Fed. R. Civ. P. 12.........................................................................................5

N.Y. Public Officers Law, §§ 84-90 ............................................................4

## PRELIMINARY STATEMENT

Medgar Evers College President Dr. Rudolph Crew ("Crew") and Chief Legal Officer Johnathon P. Hardaway, Esq. ("Hardaway") (collectively, the "Moving Defendants") are not alleged to have been personally involved in the actions complained of by former Medgar Evers College ("MEC") student and plaintiff Sakia Fletcher ("Fletcher").  As a result, none of the federal causes of action asserted against the Moving Defendants pursuant to 42 U.S.C. § 1983 can be sustained and must, therefore and respectfully, be dismissed.

Plaintiff concedes that Dr. Crew is named solely in his "official capacity" as MEC's President. For that reason, all claims against Dr. Crew, which are duplicative of the identical claims asserted against MEC, should be dismissed.  The claims against Hardaway in his official capacity are similarly redundant and for the same reason should be dismissed.

Even if the federal claims for First Amendment retaliation, procedural due process and falsification of evidence could be maintained, the lack of personal involvement by the Moving Defendants is fatal to them.  As it relates to the procedural due process claim, plaintiff's allegations establish that she was not denied any due process because the only alleged procedural impropriety during plaintiff's disciplinary hearing that even remotely implicates Hardaway (the determination that the proceeding be closed) was not the subject of a timely objection or motion by plaintiff during her hearing.  As a result, she waived any right to assert a due process violation.  In addition, plaintiff had an adequate post-deprivation remedy in the form of a New York Civil Practice Law and Rules ("CPLR") Article 78 proceeding had she been disciplined as the result of the hearing.  The disciplinary charges at issue, however, were dismissed at the hearing, making it difficult to understand the nature of the procedural due process violation that can still exist given plaintiff's success at the hearing.

With regard to plaintiff's state law claims (assuming the Court exercises supplemental jurisdiction after the dismissal of the federal claims) against the Moving Defendants, the breach of contract claim must be dismissed because plaintiff's implied contract existed as between her and MEC/the City University of New York ("CUNY"), not the Moving Defendants. Accordingly, there is no privity as between these parties. A claim for tortious interference with contract must also be dismissed to the extent that the Moving Defendants are not "third parties" for purposes of this claim, plaintiff fails to allege their specific knowledge of the contract and because there is no allegation of direct action taken by the Moving Defendants to interfere with the contract.

Plaintiff's abuse of process claim also fails on several grounds, including that the student disciplinary hearing at issue is not a judicial proceeding for purposes of the claim, because there is no allegation of the Moving Defendants' actual participation in the hearing and due to the lack of any assertion that the Moving Defendants' used the hearing for their supposed collateral objective after the commencement of the proceeding. Finally, plaintiff's claim for a violation of the New York State Freedom of Information Law ("FOIL") is time barred and must be dismissed.

For these reasons, as well as those set forth in more detail below, the Moving Defendants respectfully request that the Court dismiss the Complaint[1] in its entirety as asserted against them.

## STATEMENT OF FACTS

As alleged in the Complaint, Fletcher is a resident of the Bronx and a student at Medgar Evers College. *See* Ex. A at ¶¶ 23-24.[2] Defendant CUNY is the public university system of New York City and has its main corporate office at 205 E. 42nd Street, New York, New York

---

[1] The Complaint is attached as Exhibit A to the Decl. of Matthew J. Mehnert, dated Dec. 1, 2020 ("Mehnert Decl.").

[2] Subsequent to the incidents at issue, Fletcher graduated from MEC. *See* Mehnert Decl., at ¶ 5.

10017.  *See id.* at ¶¶ 28-33.  Defendant MEC, which is located at 1650 Bedford Avenue #2010,

Brooklyn, New York 11225, is part of, and controlled by, CUNY, and is subject to the CUNY

Bylaws, including with regard to student disciplinary proceedings.  *See id.* at ¶¶ 30, 34-37.

 Dr. Crew is, and was at all times relevant to this action, employed by CUNY and the

president of MEC.  *See id.* at ¶ 54.  Dr. Crew "is named in this action in his official capacity"

only.  *See id.* at ¶ 55.  Defendant Hardaway is, and was at all relevant times to this action,

employed by CUNY and MEC's Chief Legal Officer.  *See id.* at ¶¶ 49-51.

**<u>Community Board 9 Meeting and Plaintiff's Suspension</u>**

 This action initially arose out of a meeting of Community Board 9, a local governmental

entity that serves the neighborhoods of South Crown Heights, Prospect Lefferts Gardens,

Wingate and portions of North Flatbush, which took place on April 30, 2019 in a school

auditorium on the campus of MEC.  *See id.* at ¶¶ 62, 75-76.  Defendant New York City

Councilwoman Laurie Cumbo was present at the Community Board 9 meeting and, at some

point, plaintiff and Councilwoman Cumbo began arguing with one another, with raised voices.

*See id.* at ¶ 77.  As the verbal altercation continued, plaintiff was approached by MEC campus

security and asked to leave the auditorium, which she eventually did.  *See id.* at ¶ 78.

 The day after the Community Board 9 meeting, plaintiff received a notice from MEC

Dean and Defendant Alexis McLean that, based upon her conduct at the meeting, MEC was

temporarily suspending plaintiff under Article XV of the CUNY Bylaws, subject to a

disciplinary hearing.  *See id.* at ¶ 80; *see also* Exhibit 10 to Compl.

**<u>The Disciplinary Proceeding</u>**

 On May 3, 2019, plaintiff was presented by Dean McLean with the disciplinary charges

stemming from her conduct at the April 30, 2019 community board meeting, and was notified

3

that there would be a disciplinary hearing concerning those charges before the Faculty Student

Disciplinary Committee ("FSDC"), per the CUNY Bylaws.  *See* Ex. A at ¶¶ 89, 95-98, 112

(referencing the disciplinary charges that are attached as Exhibit 12 to the Compl.).

The disciplinary hearing took place on May 20, 2019, after multiple adjournments, and it

was a closed hearing.  *See* Ex. A at ¶¶ 104-105.  On the day of the hearing, as plaintiff

acknowledges, she did not lodge any objection to the proceeding being closed, nor did she

request that it be opened.  *See id.* at ¶ 107.

Following the presentation of MEC's case, plaintiff moved to dismiss the charges.  *See*

*id.* at ¶¶ 113, 122-125.  Ultimately, plaintiff's motion was granted, the charges against her were

dismissed and it was determined that plaintiff would "receive no sanction."  *See id.* at ¶ 125.

### Plaintiff's FOIL Requests and MEC's Responses

By way of a May 9, 2019 letter from plaintiff's counsel, Fletcher submitted a request to

MEC, among other public offices, for records pursuant to the FOIL, Article 6, §§ 84-90 of the

New York Public Officers Law.  *See* Ex. A ¶ 71; Exhibit 1 to Compl.  Specifically, plaintiff

requested records related to her initial suspension following the April 30, 2019 incident and the

subsequent disciplinary process.  *Id.*

On September 5, 2019, as MEC's Record's Officer, Hardaway responded to plaintiff's

FOIL request, and noted that MEC was denying the request pursuant to Public Officers Law §

87.2(g).  *See* Ex. A at ¶ 72; Exhibit 1 to Compl.  On September 16, 2019, plaintiff's counsel

appealed that denial by submitting a letter to the General Counsel and Vice Chancellor for Legal

Affairs of CUNY.  *Id.*  The Interim General Counsel for CUNY granted plaintiff's appeal in part,

determining that some of the documents previously withheld should be produced.  *Id.*  By way of

an October 11, 2019 email, plaintiff's counsel submitted a second FOIL request to MEC for

4

additional records.  *Id.*  On October 16, 2019, Hardaway executed a Certification pursuant to

FOIL, in which he certified that a diligent search had been conducted and responsive records

produced in response to the first FOIL request, and that there were no responsive records to the

second October 11, 2019 request.  *Id.*  No further action was taken by plaintiff with regard to her

FOIL requests following receipt of the October 16, 2019 Certification.

     Additional facts may appear as relevant in the Argument.

## ARGUMENT

     Where, as here, defendants file a motion to dismiss a complaint for "failure to state a

claim upon which relief can be granted," pursuant to Fed. R. Civ. P. 12(b)(6), to survive such a

motion, a complaint must provide "sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face."  *See DiPizio v. Empire State Dev. Corp.*, 745 Fed. Appx. 385,

390 (2d Cir. 2018).  In order to "nudge[] . . . claims across the line from conceivable to

plausible," the allegations of the complaint "must raise a reasonable expectation that discovery

will reveal evidence of the wrongdoing alleged."  *See Citizens United v. Schneiderman*, 882 F.3d

374, 380 (2d Cir. 2018).  A complaint will not be found to state a plausible claim where it

"merely asserts a sheer possibility that a defendant has acted unlawfully."  *See DiPizio*, 745 Fed.

Appx. at 390 (internal quotations marks and citation omitted).  Further, while the court deciding

the motion "must accept all allegations in the complaint as true and draw all inferences in the

non-moving party's favor," it is not bound to accept as true legal conclusions which are couched

as factual allegations.  *See LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-

76 (2d Cir. 2009).

     For the reasons that follow, because the allegations of the Complaint fail to state a

plausible claim for relief with regard to Dr. Crew or Hardaway, plaintiff's pleadings cannot

survive this motion to dismiss, which should be granted in its entirety.  *See LaFaro*, 570 F.3d at

476 ("Only a complaint that states a plausible claim for relief survives a motion to dismiss.").

**POINT I**

**ALL CAUSES OF ACTION AGAINST DR. CREW AND HARDAWAY
IN THEIR OFFICIAL CAPACITY SHOULD BE DISMISSED
AS REDUNDANT OF THE CLAIMS AGAINST MEC/CUNY**

Plaintiff has asserted claims against Dr. Crew solely in his official capacity as the

President of MEC, and against Mr. Hardaway, both individually and in his official capacity as

the Chief Legal Officer for MEC.  *See* Ex. A at ¶¶ 49-53, 55.  She has also brought suit against

MEC/CUNY and asserted against them all of the same causes of action that have been alleged

against Dr. Crew and Hardaway in their official capacities.  Under such circumstances, the

official capacity claims against Dr. Crew and Hardaway are duplicative and redundant of those

brought against MEC/CUNY and, as such, should be dismissed.

"Within the Second Circuit, where a plaintiff names both the [governmental entity] and

an official in his or her official capacity, district courts have consistently dismissed the official

capacity claims as redundant."  *See Phillips v. Cty. of Orange*, 894 F. Supp. 2d 345, 384 n.35

(S.D.N.Y. 2012); *see also Guan N. v. NYC Dep't of Educ.*, 2014 WL 1275487, at *8 (S.D.N.Y.

Mar. 24, 2014) ("[C]ourts generally dismiss official-capacity claims against a defendant if the

plaintiff has also sued the government entity that employs that defendant[.]"); *Emmons v. City

Univ. of New York*, 715 F. Supp. 2d 394, 408 (E.D.N.Y. 2010) ("The Court also dismisses with

prejudice plaintiff's ADA and Rehab Act claims against the individual []CUNY employees in

their official capacities, because they are wholly redundant to plaintiff's claims against []CUNY

itself.").  The reason for this well-settled rule is that, "official-capacity suits generally represent

only another way of pleading an action against an entity of which an officer is an agent, and

6

an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *See Guan N.*, 2014 WL 1275487, at *8 (citations omitted).  This duplicity, therefore, is unnecessary and "an inefficient use of judicial resources."  *See Guichard v. Town of Brookhaven*, 26 F. Supp. 3d 219, 227 (E.D.N.Y. 2014).

As previously noted, plaintiff has named MEC and CUNY as parties (although they are one and the same),[3] in addition to suing Dr. Crew and Hardaway in their official capacities as agents of MEC/CUNY.  Further, each cause of action averred against Dr. Crew and Hardaway in their official capacity has also been alleged against MEC/CUNY.  Therefore, because "there is no need for official capacity litigation when an individual can sue a government entity directly," and indeed plaintiff has done so in the instant case, the claims against Dr. Crew and Hardaway in their official capacities should be dismissed as redundant.  *See Candelaria v. Cunningham*, 2000 WL 798636, at *3 (S.D.N.Y. June 20, 2000); *see also Kanderskaya v. City of New York*, 11 F. Supp. 3d 431, 435 (S.D.N.Y. 2014) (dismissing claims against Commissioner Kelly in his official capacity as redundant because they were duplicative of other claims against the City of New York); *Fox v. State Univ. of New York*, 497 F. Supp. 2d 446, 450 (E.D.N.Y. 2007) (concluding that because the "State is the real party in interest for the plaintiff's claims against the individual defendants in their official capacities, it would be redundant to permit these claims to proceed when the plaintiff already has a cause of action against the State").

For this reason alone, the causes of action asserted against Dr. Crew[4] and Hardaway in their official capacities should be dismissed.

---

[3]  Under New York law, CUNY, and the senior colleges that make up CUNY, such as MEC, are considered "arms of the state."  *See Goonewardena v. New York*, 475 F. Supp. 2d 310, 316 (S.D.N.Y. 2007*)* ("Senior colleges within the CUNY system" which includes MEC, "are considered 'arms of the state.'" (citation omitted)).

[4]  Because Dr. Crew is only being sued in his official capacity, should the Court choose to dismiss all of the official capacity claims, Dr. Crew would no longer be a party to this litigation.

**POINT II**

**PLAINTIFF'S CLAIMS AGAINST DR. CREW AND HARDAWAY
UNDER 42 U.S.C. § 1983 AND RELATED NEW YORK STATE
CONSTITUTIONAL PROVISIONS FAIL AS A MATTER OF LAW
AND SHOULD BE DISMISSED**

Because neither Dr. Crew nor Hardaway were involved in the acts which formulate plaintiff's claims for First Amendment retaliation and for violations of the due process clause (asserted through 42 U.S.C. § 1983), neither claim can stand against the Moving Defendants. In addition, the New York State Constitutional claims, which are merely duplicative of the federal constitutional claims, cannot stand as a matter of law.

The Complaint alleges merely that Dr. Crew was the President of the College, but not that he took specific action that culminated in any of the alleged unlawful conduct. Mr. Hardaway, as it relates to the federal claims, is only alleged to have received an email. The Complaint is bereft of any allegation that Mr. Hardaway took any specific action. Even an inference that Mr. Hardaway took action based upon the email requires some plausible allegation that Mr. Hardaway did something. The Complaint makes no such allegation. Accordingly, plaintiff's claims pursuant to § 1983 fail because of the lack of personal involvement of these defendants.

Plaintiff's procedural due process claim must also be dismissed because plaintiff had an adequate post-deprivation remedy in the form of a New York CPLR Article 78 proceeding, she failed to object to the lone procedural impropriety in which Hardaway is alleged to have taken part and because plaintiff ultimately succeeded during the hearing, vitiating any claim that her due process rights were violated.

## A.      The Claims Under The New York State Constitution Are Redundant

Counts One, Two and Three, in addition to asserting § 1983 claims for purported

violations of the federal constitution, also allege claims based on the same conduct under the

New York State Constitution.  Such state law claims, however, are redundant of their federal

counterparts and, therefore, should be dismissed.

The New York State Constitution only provides a private right of action "where remedies

are otherwise unavailable at common law or under § 1983." *See Allen v. Antal*, 665 Fed. App'x.

9, 13 (2d Cir. 2016); *see also Sullivan v. Metro. Transit Auth. Police Dep't*, 2017 WL 4326058,

at *10 (S.D.N.Y. Sept. 13, 2017) ("[T]here is no private right of action under the New York State

Constitution where, as here, remedies are available under § 1983." (citations omitted));

*Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, N.Y.*, 111 F. Supp. 3d 459, 482–83

(S.D.N.Y. 2015) (same).  Further, it is important to note that "it is the availability of remedies

under § 1983, and not their success, that precludes a New York State Constitution claim." *See*

*Sullivan*, 2017 WL 4326058, at *10 (citing *Allen*, 665 F. App'x. at 13 (affirming dismissal of

New York State Constitution claims because "alternative remedies were available under § 1983

and common law," while at the same time affirming dismissal of § 1983 and common law

claims)) (other citation omitted).

Thus, courts consistently dismiss claims under the New York State Constitution that are

"based on the same factual allegations as and seeks the same relief as" federal constitutional

claims.  *See Bloomingburg Jewish Educ. Ctr.*, 111 F. Supp. 3d at 483; *see also Gilmore v.*

*Bouboulis*, 2016 WL 4532146, at *9 (N.D.N.Y. Aug. 29, 2016) (dismissing due process claims

asserted under the New York State Constitution where plaintiff did not assert that a different

standard would apply to the state constitution claim, that different relief would be afforded from

9

what is available under § 1983, and where the "factual allegations" underlying the federal and state constitutional claims were "substantially identical").

Nowhere in the Complaint does plaintiff allege that a different standard applies to the New York State constitutional claim, or that the New York State Constitution affords plaintiff any relief that differs from that of her § 1983 claims.  Indeed, the "factual allegations underlying the federal and New York constitutional claims" are "identical."  *See Mahone v. City of New York*, 2014 WL 1407702, at *7 (S.D.N.Y. Apr. 11, 2014).  Under such circumstances, those portion of Counts One through Three in which plaintiff asserts violations of the New York State Constitution should be dismissed as redundant of the co-extensive § 1983 claims.  *See id.* (dismissing New York State Constitution claim where plaintiff did not seek any remedy not available under § 1983, and both claims were predicated on identical factual allegations).

### B.  Plaintiff Fails To State A Claim For First Amendment Retaliation

 Plaintiff's First Amendment retaliation claim fails because there are no allegations establishing that the Moving Defendants played any role in the decision to bring disciplinary charges or the other actions about which she complains.

In order to maintain a First Amendment retaliation claim, Plaintiff must prove that: (1) she engaged in constitutionally protected conduct; (2) she suffered an adverse action; and (3) a causal relationship exists between the constitutionally protected conduct and the adverse action. *See Camacho v. Brandon*, 317 F.3d 153, 160 (2d Cir. 2003).  Additionally, in order to establish individual liability as to Dr. Crew and Hardaway pursuant to § 1983, plaintiff must also show that these defendants were acting under color of state law and that these defendants caused the plaintiff to be deprived of a federal right.  *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004).  Moreover, any finding of individual liability pursuant to

§ 1983 is premised upon a finding that the individual defendants were personally involved in the constitutional deprivation alleged.  *See id.*  Merely holding a high level position is insufficient to establish liability for § 1983 purposes.  *See id.*; *Escobar v. City of New York*, 2007 WL 1827414, at *4 (E.D.N.Y. June 25, 2007).

Personal involvement can be shown by establishing that: (1) the defendant participated directly in the alleged violation; (2) the defendant, having been information of the violation, fails to remedy the wrong; (3) the defendant created, or permitted to continue, a policy or custom pursuant to which the alleged violations occurred; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful act; or (5) the defendant exhibited deliberate indifference by failing to act on information that the violation was occurring.  *See Back*, 365 F.3d at 127 (citation omitted); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

In *Bahr v. City Univ. of New York/York College*, 2016 WL 8711060, at *7 (E.D.N.Y. Dec. 9, 2016), the court held that a plaintiff's § 1983 claims against CUNY and York College officers must be dismissed because he failed to adequately allege that the individual defendants were personally involved in the events that allegedly deprived plaintiff of his federal rights. Similarly, in *Falcon v. City Univ. of New York*, 2016 WL 3920223, at *10 (E.D.N.Y. July 15, 2016), the court dismissed claims against CUNY officials due to the lack of personal involvement in the alleged discriminatory acts. This included CUNY's President, for whom the only substantive allegation was that he was CUNY's President.  *See id.*

Here, plaintiff's First Amendment retaliation claim is based upon the premise that, in response to her protest of Councilwoman Cumbo, the College brought student disciplinary charges against her.  It is not alleged that Dr. Crew engaged in any conduct in furtherance of

11

those charges.  Nor could it be, because CUNY Bylaw § 15.4(f) provides that it is MEC's Chief Student Affairs Officer who is responsible for the issuance of charges.  *See* Ex. B.  There is and could be no allegation that this is either Moving Defendant.

At paragraphs 83-84 of the Complaint, it is alleged only that Dr. Crew did not make certain determinations necessary for the College to institute the disciplinary charges.  Absent from these allegations, however, is any claim that Dr. Crew had knowledge that the charges were being preferred or that his failure to issue these determinations was intentional on his part, as they must be for there to have been personal involvement.  Plaintiff also alleges various improprieties during the course of the hearing.  Dr. Crew is not alleged to have participated in any of those alleged improprieties, nor is he alleged to have had knowledge of this conduct.  As a result, there is no allegation that Dr. Crew was personally involved in any of the constitutional violations upon which plaintiff rests her First Amendment retaliation claim.

With regard to Hardaway, plaintiff alleges that "MEC, acting through Dean McLean and Johnathan Hardaway failed to comply with numerous basic procedural guarantees and the CUNY Bylaws."  *See* Ex. A at ¶ 95.  Plaintiff does not allege, however, that Hardaway was involved in the decision to prefer the disciplinary charges.  At paragraphs 109-110, plaintiff more clearly states her complaint against Hardaway.  Specifically, she alleges that he received an email from Councilwoman Cumbo's Chief of Staff requesting that the disciplinary hearing be "closed" to the public.  Plaintiff then alleges that Hardaway, and others, "put Councilwoman Cumbo's request into effect."  Plaintiff does not allege how this was done or what role Hardaway played in that action.  She merely claims generally that because he received the email, he must have acted upon it.  That is well below the threshold for establishing personal involvement in the challenged act. *See Falcon*, 2016 WL 3920223, at *10.

Regardless, the CUNY Bylaws are dispositive on this issue.  Section 15.4(q)(2) states that "All faculty student disciplinary committee hearings are closed hearings unless the respondent requests an open public hearing."  *See* Ex. B.  At paragraph 107 of the Complaint, plaintiff admits never seeking an open hearing from the committee chairperson, who had discretion to rule on that request.  *See id.*  Accordingly, the First Amendment retaliation claim against Hardaway must also be dismissed.

### C.      Plaintiff Fails To State A Plausible Violation of Due Process

Plaintiff alleges procedural improprieties in the conduct of the hearing relating to her suspension and disciplinary charges.  Procedural due process applies only to liberty or property interests protected by the Fourteenth Amendment.  *See Lima v. New York City Dep't of Educ.*, 2013 WL 3325002, at *2 (E.D.N.Y. July 1, 2013).  In order to have a property interest in a benefit, a party must have more than an abstract need or desire for it, the party must have a legitimate claim of entitlement to it.  *See id.* at *3 (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)); *Finley v. Giacobbe*, 79 F.3d 1285, 1296 (2d Cir. 1996).  Students facing a suspension or disciplinary action must be given some kind of notice and afforded some kind of hearing.  *See Goonewardena v. New York*, 475 F. Supp. 2d 310, 325 (S.D.N.Y. 2007).

Plaintiff concedes that she received notice of the charges against her and was given a hearing.  *See* Ex. A at ¶¶ at 112-13; Exhibit 12 to Complaint.  Regardless of her allegations about the conduct at the hearing, her claim still must fail because, as stated at paragraph 125 of the Complaint, she won at the hearing.  *See Garrido v. Coughlin*, 716 F. Supp. 98, 102 (S.D.N.Y. 1989) (dismissing due process claim because, *inter alia*, plaintiff had succeeded in having disciplinary charge dismissed).  Thus, there is no constitutional deprivation to be remedied.

13

Even if she had not succeeded at the hearing, New York CPLR Article 78 provided plaintiff with an adequate method to challenge the suspension or charges as arbitrary or capricious.  *See* CPLR § 7803; *Attallah v. New York College of Osteopathic Medicine,* 94 F. Supp. 3d 448, 455 (E.D.N.Y. 2015); *Goonewardena*, 475 F. Supp. 2d at 325.  The availability of this adequate post-deprivation remedy means that there has been no constitutional violation.  *See id.*  Here, Plaintiff could have, but did not, avail herself of the protections of Article 78.  Her failure to do so is fatal to her due process claim.  *See id.*

Assuming, *arguendo*, that Plaintiff could maintain her procedural due process claim against Dr. Crew and Hardaway despite these deficiencies, there are not sufficient allegations establishing either Moving Defendants' personal involvement in the alleged due process violations.  As set forth above, Dr. Crew is not alleged to have had any role in the disciplinary hearing.  Thus, no claim may lie against him. *See Falcon*, 2016 WL 3920223, at *10.

With regard to Hardaway, the only allegation is that he received an email regarding the Councilwoman's request that the hearing be closed to the public.  The hearing was presumptively closed to the public, *see* Ex. B at § 15.4(q)(2), and so this email is immaterial. Plaintiff concedes that that she did not request that the hearing be made "open" to the public, as was her right pursuant to the CUNY Bylaws, understanding that members of the public would, consequently, not be able to attend.  *See* Ex. A at ¶ 107.  Stated differently, regardless of her reasons, plaintiff knew that she had the right to make the objection and elected not to.  As a result, she knowingly waived any claim that this alleged procedural defect deprived her of due process.  *See Morris v. New York City Employees' Ret. Sys.*, 129 F. Supp. 2d 599, 609 (S.D.N.Y. 2001) ("knowing and voluntary waiver" requirement applies in civil context).  Thus, as this was the only alleged deprivation relating to the hearing in which Hardaway was involved, there can

14

be no claim against him sounding in due process.  *See Morales v. New York*, 22 F. Supp. 3d 256, 277 (S.D.N.Y. 2014) (where plaintiff willingly abandoned arguments or avenues of redress during hearing, no due process claim lies).

> **D.      Plaintiff Fails To Allege A Claim Against Dr. Crew And Hardaway For The Manufacturing Of False Evidence In Violation Of The 14 Amendment**

Plaintiff's third cause of action for the manufacturing of allegedly false evidence appears to be asserted only against defendants McLean, MEC and CUNY.  It is not alleged, nor could it be, that Dr. Crew or Hardaway were personally involved with the alleged falsification of evidence.  To the extent, however, that this cause of action is asserted against them, for the reasons articulated above, the cause of action fails due to the lack of personal involvement by these defendants.  *See Falcon*, 2016 WL 3920223, at *10.  For that reason, the third cause of action, to the extent it is even alleged against Dr. Crew and Hardaway, must be dismissed as against them.

### POINT III

### THE STATE LAW CLAIMS FOR ABUSE OF PROCESS, TORTIOUS INTERERENCE WITH CONTACT AND BREACH OF CONTRACT ARE FATALY FLAWED AS TO DR. CREW AND HARDAWAY

In Counts Four through Six, plaintiff asserts "*against* all Defendants" three causes of action sounding in state law:  (1) State law abuse of process; (2) tortious interference with contract; and (3) breach of contract.  As an initial matter, should the Court agree, for the above stated reasons, that all of the federal law causes of action against Dr. Crew and Hardaway should be dismissed, the Moving Defendants respectfully request that the Court decline to exercise supplemental jurisdiction over the remaining state law claims as to them.  *See, e.g.*, *Washington v. Westchester Cty. Dep't of Corr.*, 2015 WL 408941, at *11 (S.D.N.Y. Jan. 30, 2015) ("Having

now dismissed the federal claim, the Court exercises its discretion under 28 U.S.C. § 1367 to decline jurisdiction over Plaintiff's remaining state-law claims.").

Regardless of whether the Court entertains the prospect of exercising supplemental jurisdiction over the state law claims, each of the state law causes of action, as pled, is fatally flawed as a matter of law, and, therefore, should be dismissed.

## A.    Plaintiff's State Law Abuse Of Process Claim Fails As A Matter Of Law

In Count Four of the Complaint, Plaintiff asserts a claim for abuse of process under New York law, and includes a formulaic recitation of the basic elements of such a claim. However, plaintiff utterly fails to plead sufficient factual allegations to state a facially plausible claim for abuse of process. As a result, Count Four as to Dr. Crew and Hardaway should be dismissed.

To adequately plead a claim for abuse of process under New York law, a plaintiff must allege: (1) use of a regularly issued legal process, either civil or criminal; (2) with the intent to do harm without excuse or justification; and (3) the use of process in a "perverted manner" to obtain a collateral objective. *See Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC*, 2013 WL 417406, at *15–16 (S.D.N.Y. Feb. 4, 2013) (citations omitted); *see also Klass v. Frazer*, 290 F. Supp. 2d 425, 426 (S.D.N.Y. 2003) (describing the same elements). Courts have defined the necessary legal process as a "direction or demand that the person to whom it is directed perform or refrain from the doing of some prescribed act." *See Korova Milk Bar*, 2013 WL 417406, at *15 (citation omitted). Further, "the legal process must have been issued by or filed in a court." *See id.* (citation omitted). As for the collateral objective prong, it requires that the "pursuit" of the collateral objective "occur *after* the process is issued." *Id.* at *16 (emphasis in original); *see also Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 213 (S.D.N.Y. 2014) (same).

16

Plaintiff fails to plead a cause of action for abuse of process under New York law for multiple reasons. First, while only vaguely referenced, it appears that the "legal process" placed at issue by plaintiff is the disciplinary proceedings initiated against plaintiff by CUNY. *See* Ex. A at ¶¶ 167-171. Such a proceeding is "not equivalent of process filed in a court," *i.e.*, a court proceeding, and therefore, for this reason alone, plaintiff's abuse of process claim necessarily fails. *See Nickerson v. Commc'n Workers of Am. Local 1171*, 2005 WL 1331122, at *8 (N.D.N.Y. May 31, 2005) (concluding that charges filed with the union against the former union president, a "trial" held by the union as to those charges and a New York State Department of Labor investigation did not constitute "process" for an abuse of process claim, and specifically the "trial" was "not equivalent of process filed in a court"); *see also Korova Milk Bar*, 2013 WL 417406, at *16 (determining that a hearing before the New York State Liquor Authority regarding the revocation of plaintiff's liquor license "did not fall within the definition of 'process' . . . because it is not a court proceeding").

Second, even assuming that the at-issue disciplinary process could be said to fall within the definition of "process" for purposes of an abuse of process claim under New York law, for the reasons set forth in Point II, *supra*, absent from plaintiff's pleadings are factual allegations asserting that Dr. Crew or Hardaway had any involvement in the FSDC hearing that took place, after which the charges against plaintiff were dismissed. *See* Ex. A at ¶¶ 95-126. At most, Plaintiff alleges, in the most speculative of terms, that through McLean and Hardaway, MEC did not follow certain procedures in noticing and conducting the disciplinary hearing, without any specificity as to Hardaway's involvement. Thus, having failed to allege that Dr. Crew and Hardaway were actually involved in the legal process at issue, the abuse of process claim should be dismissed. *See Sullivan*, 2017 WL 4326058, at *9 (dismissing abuse of process claim where

17

individual defendant police officers were not alleged to have been involved in the legal process at issue, which was the prosecution of plaintiff, rather it was the District Attorney who controlled that process); *see also Gilman v. Marsh & McLennan Companies, Inc.*, 868 F. Supp. 2d 118, 133 (S.D.N.Y. 2012) (concluding that speculative allegations of defendants involvement in the legal process at issue was "insufficient to state a plausible claim for abuse of process").

The final fatal flaw in plaintiff's abuse of process claim is that plaintiff fails to allege any pursuit of a collateral objective that occurred *after* the legal process was issued. In other words, plaintiff fails to allege a "post-commencement use of process." *See Mosdos Chofetz Chaim, Inc.*, 14 F. Supp. 3d at 213. Instead, as pled, plaintiff relies solely upon the commencement of the disciplinary hearing in asserting that that process was used to "chill core First Amendment protest and speech." *See* Ex. A at ¶¶ 167-169. Plaintiff makes no assertion that the disciplinary proceeding, after initiated, was subsequently used to pursue defendants' purported collateral objective. On this additional basis, therefore, plaintiff's abuse of process cause of action should be dismissed as to Dr. Crew and Hardaway. *See Mosdos Chofetz Chaim, Inc.*, 14 F. Supp. 3d at 213 (dismissing an abuse of process claim which "relied solely on the allegation that []Defendants 'commenc[ed] the foreclosure action,'" but did not allege, as is required, that the action was "subsequently used . . . in some way to pursue the collateral objective").

**B.**     **Plaintiff Fails To Plausibly Plead A Claim For Tortious Interference With Contract Against Dr. Crew And Hardaway**

Plaintiff asserts in Count Five of the Complaint that "all Defendants," including Dr. Crew and Hardaway, intentionally interfered with Plaintiff's contractual rights under CUNY's Bylaws. However, as with the other state law claims, the Complaint fails to state a claim for such relief that is plausible on its face and which, accordingly, should be dismissed.

Pursuant to New York law, to adequately plead a cause of action for tortious interference with a contract, a plaintiff must allege the following:  (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom."  *See Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 404 (S.D.N.Y. 2012) (quoting *Kirch v. Liberty Media Corp*., 449 F.3d 388, 401–02 (2d Cir. 2006)) (other citation omitted). Plaintiff's allegations are fatally deficient with respect to several of these elements.

First, the tortious interference with contract claim should be dismissed because Dr. Crew and Hardaway are not strangers to the purported implied contract they are alleged to have interfered with, but rather are agents of MEC/CUNY, one of the alleged parties to that contract. It is well-settled under New York law that "only a stranger to a contract, such as a third party, can be liable for tortious interference with a contract."  *See Minetos v. City Univ. of New York*, 925 F. Supp. 177, 187 (S.D.N.Y. 1996) (quoting *Koret, Inc. v. Christian Dior, S.A.*, 161 A.D.2d 156, 157 (1st Dep't 1990)); *see also Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*, 894 F. Supp. 2d 288, 336 (S.D.N.Y. 2012) ("A claim for tortious interference with a contract must be based on a *non-party* improperly interfering with a contract between two contracting parties, and cannot be based on the actions of a director or officer in his official capacity." (internal quotation marks and citations omitted)).

Here, Plaintiff asserts that the CUNY Bylaws are part of the purported implied contract between MEC/CUNY and its students, including plaintiff, and that "Plaintiff's contractual rights" under those Bylaws were violated by the actions of defendants, including Dr. Crew and Hardaway.  However, Dr. Crew, as President of MEC, and Hardaway, as MEC's Chief Legal

Officer, can hardly be said to be "strangers" to the CUNY Bylaws, but rather are agents of CUNY, through which Plaintiff seeks to hold MEC/CUNY responsible for breach of the implied contract by the actions they took in their official capacity.  For this reason alone, therefore, plaintiff's tortious interference with contract claim should be dismissed as to Dr. Crew and Hardaway.  *See Minetos* 925 F. Supp. at 187-88 (concluding that because the individual defendants "are all professors in Hunter College's Music Department," they "cannot be liable for tortious interference with contractual relations under New York State law since they are agents of Hunter College," and therefore not strangers to the contract at issue); *see also Nu-Life Constr. Corp. v. Bd. of Educ. of City of New York*, 204 A.D.2d 106, 107 (1st Dep't 1994) ("Plaintiff has failed to produce evidence . . . to prove that Horowitz was at any time acting other than as an agent of the Board, or to show that Horowitz committed any independent tort.").

Second, Plaintiff has not sufficiently alleged that Dr. Crew and Hardaway knew about the purported "implied contract" that plaintiff alleges existed between herself and MEC/CUNY via the CUNY Bylaws.  A tortious interference of contract claim "cannot survive a motion to dismiss by making merely a 'conclusory assertion' of knowledge," rather a plaintiff "must 'provide specific allegations' of the defendant's [actual] knowledge" of the specific contract. *See Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 796, 813 (S.D.N.Y. 2008).  Here, all that Plaintiff avers as to knowledge is that, "upon information and belief, all Defendants know of the CUNY Bylaws."  *See* Ex. A at ¶ 176.  Simply stating a general knowledge of the CUNY Bylaws is a far cry from asserting "specific allegations" of knowledge of the implied contract, and is nothing more than "mere speculation," requiring dismissal of the tortious interference of contract claim.  *See Medtech Prods. Inc.*, 596 F. Supp. 2d at 796-97 (rejecting plaintiff's wholly conclusory and general allegation that defendant "knew of the contracts at

issue"); *Boehner v. Heise*, 734 F. Supp. 389, 404 (S.D.N.Y. 2010) (concluding that plaintiff failed to demonstrate "that defendants knew of any contracts that Plaintiffs had with their customers").

Finally, plaintiff has failed to adequately allege that Dr. Crew and Hardaway took any "direct" action against plaintiff for the purpose of intentionally interfering with the alleged implied contract between MEC/CUNY and herself.  "To satisfy the third prong of the test, Plaintiffs must show Defendants' direct interference with a contract."  *See Boehner*, 734 F. Supp. 2d at 404.  This requires a defendant to "have directed some activities toward the [parties] whose contracts are alleged to have been breached."  *See Id.* (collecting cases) (citations omitted).  This element, as with all elements of this cause of action, must be supported by "more than mere speculation."  *See Clean Cloal Techs., Inc. v. Leidos, Inc.*, 377 F. Supp. 3d 303, 319 (S.D.N.Y. 2019) ("[T]o avoid dismissal of a tortious interference with contract claim a plaintiff must support his claim with more than mere speculation.").

With regard to Dr. Crew, plaintiff does not assert that he "intentionally interfered with Plaintiff's contractual rights under the CUNY Bylaws."  *See* Ex. A at ¶ 173.  Thus, as to Dr. Crew, this cause of action must be dismissed.  Similarly, all that is alleged as to Hardaway is the wholly conclusory averment that he "intentionally interfered" with plaintiff's contractual rights, with a reference to an earlier portion of the complaint.  *See id*. at ¶¶ 173-77 (referencing back to ¶¶ 95-126).  However, in that earlier portion of the Complaint, there are only three references to Hardaway, in which plaintiff makes only the most conclusory and speculative of allegations: that "MEC, through Dean McLean and Johnathon Hardaway[,] failed to comply with numerous basic procedural guarantees and the CUNY Bylaws"; and that after Dean McLean received an e-mail from Councilwoman Cumbo's Chief of Staff, on which Hardaway was copied, requesting

that the disciplinary hearing be closed to the public, Dean McLean, Hardaway and any other

unnamed members of the MEC's "senior leadership" with whom this request was shared,

ensured that the hearing was closed.  *See id.* at ¶¶ 95, 109-110.  Absent from the Complaint is

any specification as to any "direct" action that Hardaway he took against plaintiff or any third-

party for purposes of causing a breach of the implied contract, including with regard to ensuring

that the hearing was closed or that other procedural requirements were disregarded.  *See, e.g.*,

*Plasticware*, 852 F. Supp. 2d at 404 (dismissing tortious interference with contract claim where,

*inter alia*, "Plaintiff does not allege that Defendant took any actions toward third parties with

which Plaintiff had contracts"); *B & M Linen Corp. v. Kannegiesser USA, Corp.*, 679 F. Supp.

2d 474, 485 (S.D.N.Y. 2010) ("[T]he defendant's interference must be direct: the defendant must

direct some activities towards the third party . . . ." (internal quotation marks and citation

omitted)).  Accordingly, because plaintiff has failed to plead this necessary element of a tortious

interference with contract cause of action, Count Five should be dismissed as to both Dr. Crew

and Hardaway.

### C.    A Breach of Contract Claim Has Not Been Adequately Pled As To Hardaway And Dr. Crew

In Count Six of the Complaint, Plaintiff asserts a claim of breach of contract, and in the

heading for that Count, states it is alleged against all defendants.  *See* Ex. A at ¶¶ 167-180.

However, within the specific allegations, plaintiff asserts that "the CUNY Bylaws exist as a

contract between CUNY/MEC and their students," and that implied contract was breached by the

"CUNY/MEC Defendants," which is believed to be a reference to just MEC and CUNY.  Thus,

it does not appear that plaintiff is in fact alleging breach of contract on the part of Dr. Crew and

Hardaway, and for good reason.

It is axiomatic that a plaintiff "may not assert a cause of action . . . for breach of contract against a party with whom it is not in privity."  *See Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 215 (S.D.N.Y. 1997) (quoting *Perma Pave Contracting Corp. v. Paerdegat Boat & Racquet Club, Inc.*, 156 A.D.2d 550, 551 (2d Dep't 1989)) (other citations omitted).  Rather, "[o]nly those who are parties to a contract may be held liable for breach of that contract." *Oberstein v. SunPower Corp.*, 2010 WL 1705868, at *4 (E.D.N.Y. Apr. 28, 2010).

Here, as plaintiff acknowledges, the purported implied contract is "between CUNY/MEC and their students"; not between plaintiff and any of the individual defendants.  *See* Ex. A at ¶¶ 146-48, 172.  Thus, because Dr. Crew and Hardaway have never been a party to any contract with plaintiff, any claim for breach of contract necessarily fails as a matter of law.  *See Kretzmon v. Erie Cty.*, 2013 WL 636545, at *8 (W.D.N.Y. Feb. 20, 2013) (concluding that because the "settlement agreement was between Plaintiff and Erie County only," the attempt to "assert her breach of contract claim against" individual officials of the County Sheriff's Office necessarily fails for want of privity).

### POINT IV

### THE CAUSE OF ACTION FOR VIOLATIONS OF THE NEW YORK FREEDOM OF INFORMATION LAW SHOULD BE DISMISSED AS TO DR. CREW AND HARDAWAY

In her Seventh and final Cause of Action, plaintiff asserts against all defendants, including Dr. Crew and Hardaway, that they collectively violated the FOIL by wrongfully withholding documents that had been requested by plaintiff via a properly submitted FOIL request.  This cause of action is entirely improper to assert before this Court, and even if it were appropriate, such a claim is time-barred.

In an unbroken line of cases, the courts of this circuit have held that the appropriate vehicle for pursing an alleged violation of the FOIL, N.Y. Public Officers Law §§ 84-90, including to obtain attorney's fees and litigation costs, is to commence a proceeding in state court pursuant to CPLR Article 78 over which federal courts have no jurisdiction. *See, e.g.*, *Hayes v. Perotta*, 751 F. Supp. 2d 597, 602 (S.D.N.Y. 2010) ("Under FOIL, challenges of information denials must be brought in an Article 78 proceeding."); *Yip v. Bd. of Trustees of State Univ. of New York*, 2004 WL 2202594, at *7 (W.D.N.Y. Sept. 29, 2004) (holding that FOIL Claims, "may be enforced by means of a proceeding pursuant to N.Y. C.P.L.R. Article 78," and this court "has no jurisdiction over an Article 78 proceeding"); *Lluberes v. City of Troy*, 2014 WL 1123413, at *22 (N.D.N.Y. Mar. 21, 2014) ("The appropriate vehicle for plaintiffs to pursue their FOIL requests is to commence an Article 78 proceeding.  This Court does not have jurisdiction over an Article 78 proceeding.").  Thus, plaintiff's FOIL claim must be dismissed as she has not commenced an Article 78 proceeding.

Further, even if this was the appropriate court in which to lodge a claim for violations of the FOIL, those claims are untimely.  Pursuant to CPLR § 217(1), all challenges brought under Article 78 must be "filed 'within four months after the determination to be reviewed becomes final.'"  *See Hayes*, 751 F. Supp. 2d at 602 (citing § 217(1)).  Here, the last possible date from which plaintiff's FOIL claim could be said to accrue from is October 16, 2019, the date on which Hardaway issued a certification on behalf of MEC stating that a diligent search had been undertaken and all documents responsive to plaintiff's FOIL requests had been produced.[5] Therefore, to be timely, plaintiff's FOIL claim had to be filed by February 16, 2020.  Because the Complaint was filed on June 1, 2020, plaintiff's FOIL claim is indisputably untimely and

---

[5]  The Certification Pursuant to the FOIL of Johnathon Hardaway, dated October 16, 2019, is attached as Exhibit 6

should be dismissed.[6] *See Hayes*, 751 F. Supp. 2d at 602. ("Because Plaintiff did not file this claim until March 2009," after making being denied documents he requested from the City in 2006 and 2007, "and because he does not appear to have ever brought an Article 78 proceeding, this claim is dismissed."); *Yip*, 2004 WL 2202594, at *7 (finding plaintiff's FOIL claim untimely where "state official's denial of plaintiff's FOIL request is alleged to have occurred on or about February 19, 2003, requiring any Article 78 proceeding seeking review of that denial to be commenced by June 19, 2003," but where the complaint was filed on August 22, 2003).

## CONCLUSION

For all of the reasons set forth above, Defendants Dr. Crew and Hardaway respectfully request that the Court grant their motion to dismiss all of the causes of action alleged against them, with prejudice, together with such other and further relief as the Court may deem just and proper

Dated: Melville, New York
        December 1, 2020

                              LAMB & BARNOSKY, LLP


                              By: /s/ Matthew J. Mehnert_____
                                    Matthew J. Mehnert, Esq.
                                    Joshua S. Sprague, Esq.
                                    534 Broadhollow Road
                                    Melville, New York 11747
                                    (631) 694-2300
                                    *Attorneys for Defendants Dr. Crew*
                                    *and Hardaway*

---

to the Complaint (ECF No. 1-6).
[6] It should also be noted that February 16, 2020 was before Governor Cuomo issued Executive Order 202.8 on March 20, 2020, which was the first of several Executive Orders that acted to toll New York's statute of limitations in response to COVID-19.