USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/2/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAKIA FLETCHER, | 20 Civ. 4163 (VEC) (SDA) |
| Plaintiff, | |
| - against - | |
| MEDGAR EVERS COLLEGE, CITY UNIVERSITY OF NEW YORK, RUDOLPH CREW, in his capacity as President of Medgar Evers College, FÉLIX V. MATOS RODRIGUEZ, in his capacity as Chancellor of the City University of New York, ALEXIS McLEAN, individually and in her capacity as Dean of Medgar Evers College, JOHNATHON P. HARDAWAY, individually and in his capacity as Chief Legal Officer for Medgar Evers College, and COUNCILWOMAN LAURIE CUMBO, | SETTLEMENT AGREEMENT, GENERAL RELEASE, AND ORDER OF DISMISSAL WITH PREJUDICE |
| Defendants. | |

This SETTLEMENT AGREEMENT, GENERAL RELEASE, AND ORDER OF DISMISSAL WITH PREJUDICE ("Settlement Agreement") is made by and between Plaintiff Sakia Fletcher (the "Plaintiff") and Defendants City University of New York ("CUNY") and Laurie Cumbo ("Cumbo"), as of the date this Settlement Agreement is "So Ordered" by the Court:

WHEREAS, Plaintiff commenced this action by filing a complaint on or about June 1, 2020, (the "Complaint") in the United States District Court for the Southern District of New York, Civil Action Number 20-CV-4163-VEC-SDA, against defendants CUNY, Medgar Evers College ("MEC"), Dr. Rudolph Crew, in his capacity as President of MEC, Félix V. Matos-Rodriguez, in his capacity as Chancellor of CUNY, Alexis McLean, individually and in her capacity as Dean of MEC, Johnathon P. Hardaway, individually and in his capacity as Chief Legal Officer for MEC, and New York City Councilwoman Laurie Cumbo (collectively the "Defendants"), alleging claims pursuant to the United States and New York Constitutions, and New York statutory and common law; and

WHEREAS, Defendants assert that MEC is not a legally cognizable entity separate from CUNY, which is the proper institutional defendant in the above-captioned action; and

WHEREAS, any and all references to CUNY in this Settlement Agreement include all agencies, departments, and subdivisions thereof, including but not limited to MEC; and

WHEREAS, defendant Johnathon P. Hardaway died on or about January 7, 2021 and official capacity claims against Jonathan P. Hardaway were automatically replaced by claims against his successor under Fed. R. Civ. P. 25(d); and

WHEREAS, any reference to defendant Hardaway in this Settlement Agreement includes his estate and every representative of his estate as well as his successor in his public office; and

WHEREAS, the claims and allegations in the Complaint, together with all later related filings and proceedings, the disciplinary proceeding against Plaintiff, the requests for records pursuant to the N.Y. Freedom of Information Law, and appeals thereof, constitute the "Action" for the purposes of this Settlement Agreement; and

WHEREAS, the Defendants expressly deny any wrongful conduct or liability, or violation of any federal, state, or local constitution, statute, ordinance, or law in this matter whatsoever; and

WHEREAS, Plaintiff and Defendants desire to fully resolve the claims between them and any and all other disputes, whether known or unknown, without further litigation or proceedings before the federal or state courts or any other judicial or administrative body, and without admission of fault or liability; and

WHEREAS, no party hereto is an infant or incompetent person for whom a committee has been appointed, and no person not a party to this Settlement Agreement has an interest in the subject matter of the Action; and

NOW THEREFORE, in consideration of the mutual promises, covenants, representations and other consideration contained in this Settlement Agreement, Plaintiff and Defendants hereby stipulate and agree as follows:

1.      **Dismissal of the Action with Prejudice.**

The Action, and all claims that were or could have been asserted therein, are dismissed with prejudice against Defendants pursuant to Fed. R. Civ. P. 41(a) and without payments, attorneys' fees, costs, disbursements, or expenses in excess of the amounts set forth in Paragraph 3, except that the Court shall retain jurisdiction to enforce this Settlement Agreement, or if the approvals in Paragraph 4 are not obtained within one hundred twenty (120) days of Plaintiff's submission of the documentation required by Paragraphs 2, 4, 5, and 8, then Plaintiff may declare this Settlement Agreement, including the attached Stipulation of Dismissal (Exhibit A), null, void, and of no further force and effect, and Plaintiff shall have the right to submit an application to the Court to reinstate the instant Action against (a) defendant Cumbo within thirty (30) days of receipt of notice that approval by New York City has not been obtained, and (b) defendants CUNY, Rodriguez, Crew and McLean within thirty (30) days of receipt of notice that approval by New York State has not been obtained.

2.      **Dismissal of the Action Against Defendants.**

Simultaneously with the execution of this Settlement Agreement, counsel for Plaintiff shall execute and deliver to counsel for CUNY a Stipulation and Order in the form annexed hereto as **Exhibit A** (the "Stipulation and Order of Discontinuance With Prejudice"), dismissing with prejudice the Action and all claims asserted therein against defendants Crew, Rodriguez, Hardaway, and McLean, in their individual and official capacities pursuant to Fed. R. Civ. P. 41(a) and without payments, attorneys' fees, costs, disbursements or expenses to any of these parties as against the other, except to the extent that the Court retains continuing jurisdiction as set forth in Paragraph 1.

3.      **Payments to Plaintiff.**

In full consideration of Plaintiff's execution of this Settlement Agreement, her agreement to be bound by its terms, and her undertakings as set forth herein including, but not limited to, the

dismissal of the Action with prejudice, Plaintiff's waiver and release of claims as set forth in Paragraph 12, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the gross amount of TWENTY-SEVENTY THOUSAND DOLLARS ($27,000.00) shall be paid as follows:

        a.      The State of New York shall make the following two payments as set forth in Paragraphs 3(a)(i) and (ii):

        (i)      The State of New York, on behalf of CUNY, shall pay to Plaintiff the sum of TEN THOUSAND DOLLARS ($10,000.00), for which an I.R.S. Form 1099 shall be issued as appropriate, in full and complete satisfaction of any and all claims for compensatory damages (including but not limited to pain and suffering, mental and emotional anguish and trauma, damage to reputation, economic damages, punitive damages, and liquidated damages) incurred by Plaintiff that were or could have been the subject of any claim in the Action.  The foregoing payment shall be made payable to "Sakia Fletcher" and sent to J. Remy Green, Cohen & Green, P.L.L.C., 1639 Centre Street, Suite 216, Ridgewood, NY 11385; and

        (ii)      The State of New York, on behalf of CUNY, shall pay to Cohen & Green, P.L.L.C., the sum of FIFTEEN THOUSAND DOLLARS ($15,000.00), for which an I.R.S. Form 1099 shall be issued as appropriate, in full and complete satisfaction of any and all claims for attorneys' fees, costs, disbursements, and expenses incurred by Plaintiff for any and all counsel who have assisted or at any time represented Plaintiff in the Action, as well as in connection with any other proceeding, whether administrative, judicial, or otherwise, including but not limited to any other claim or action alleging any of the acts, transactions, occurrences, or omissions asserted in the Action.  The foregoing payment shall be made payable to "COHEN GREEN P.L.L.C." and sent to J. Remy Green, Cohen & Green, P.L.L.C., 1639 Centre Street, Suite 216, Ridgewood, NY 11385; and

b.      The City of New York shall pay to Plaintiff the sum of TWO THOUSAND

DOLLARS ($2,000.00), for which an I.R.S. Form 1099 shall be issued as appropriate, in full and

complete satisfaction of any and all claims that were or could have been raised in the Action,

including, but not limited to: (i) any and all claims for damages (including but not limited to pain and

suffering, mental and emotional anguish and trauma, damage to reputation, economic damages,

punitive damages, and liquidated damages), incurred by Plaintiff that were or could have been the

subject of any claim in the Action; (ii) any and all claims for equitable and injunctive relief, and (iii)

any and all claims for attorneys' fees, costs, disbursements, and expenses incurred by Plaintiff for any

and all counsel who have assisted or at any time represented Plaintiff in the Action, as well as in

connection with any other proceeding, whether administrative, judicial, or otherwise, including but

not limited to any other claim or action alleging any of the acts, transactions, occurrences, or

omissions asserted in the Action.  The foregoing payment shall be made payable to "Sakia Fletcher"

and sent to J. Remy Green, Cohen & Green, P.L.L.C., 1639 Centre Street, Suite 216, Ridgewood, NY

11385.

4.      **Approval of Payments.**

a.      The payments referenced in Paragraph 3(a) of this Settlement Agreement are

subject to and conditioned upon the approval of all appropriate State officials in accordance with

N.Y. Public Officers Law § 17.  Plaintiff and her attorneys agree to promptly execute and deliver all

necessary and appropriate vouchers and other requested documentation with respect to obtaining

such approval and effectuating payment, including, but not limited to the Affidavit of Medicare

Eligibility Status attached hereto as **Exhibit B** and any required attachments thereto.

b.      The payments referenced in Paragraph 3(b) of this Settlement Agreement are

subject to and conditioned upon the approval of all appropriate City officials in accordance with the

New York City Charter.  Plaintiff and her attorneys agree to promptly execute and deliver all

documents necessary for the City to implement its portion of the settlement, including releases from Plaintiff and Plaintiffs' attorneys, a substitute W-9 form, and an affidavit concerning liens.

     5.    **Accrual of Interest.**

In the event that the payments specified in Paragraph 3(a) have not been made by the one hundred twentieth (120th) day after receipt by the New York State Office of the Attorney General ("OAG") of a "So Ordered" copy of this Settlement Agreement, entered on the docket by the Clerk of Court, and the Stipulation and Order of Discontinuance With Prejudice (Exhibit A), together with all other documentation, including, without limitation, documentation required under Paragraphs 2, 4 and 8 of this Settlement Agreement, interest on any part of the amounts specified in Paragraph 3(a) not paid by the one hundred twentieth (120th) day shall accrue at the statutory rate prescribed by 28 U.S.C. § 1961, commencing on the one hundred and twenty-first (121st) day.  In the event the Court does not "So Order" this Settlement Agreement or the Stipulation and Order of Discontinuance With Prejudice (Exhibit A), interest on any part of the amounts specified in Paragraph 3(a) not paid by the one hundred twentieth (120th) day will run from the time the OAG receives the documents required under Paragraphs 2, 4, and 8 of this Settlement Agreement.  In the event that payment of the amounts specified in Paragraph 3(a) constitutes "funds of a convicted person" within the meaning of N.Y. Exec. Law § 632-a, then the aforementioned one hundred twenty (120) day period shall be extended by an additional thirty (30) days to allow compliance with that law.

     6.    **Training of Immediate Successors to Dr. Crew and Johnathon Hardaway.**

Within ninety days after the installation of the latter of the two officers appointed to succeed Dr. Crew as President of MEC and Johnathon Hardaway as Chief Legal Officer of MEC, CUNY shall provide such officers with training concerning the applicability of the First Amendment of the federal Constitution to student speech at CUNY, including the prohibition on disciplining students

at MEC under the CUNY Bylaws for exercising their rights under the First Amendment and the

cases of People v. Pruden, Dkt. No. 2015SK015273, (Kings Cty. 2015), Healy v. James, 408 U.S. 169

(1972) and Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98 (2d Cir. 2001) (the

"Training").  If such officers are not installed within one hundred twenty (120) days of Plaintiff's

submission of the documentation required by Paragraphs 2, 4, 5, and 8, then within forty-five (45)

days thereafter CUNY shall provide any interim officers with the Training, and shall subsequently

provide the Training required by the first sentence of this Paragraph.

   7. **Responsibility of Plaintiff and Plaintiff's Attorneys for Taxes.**

   Any taxes, or interest or penalties on taxes, on the payments referred to in Paragraph 3 of

this Settlement Agreement shall be the sole and complete responsibility of Plaintiff (or Plaintiff's

attorneys respectively, for fees paid to said attorneys).  Plaintiff and Plaintiff's attorneys acknowledge

and agree that they shall have no claim, right, or cause of action against CUNY, the State of New

York, and/or the City of New York, or any of their agencies, departments, divisions, officers,

employees, agents, attorneys, insurers, and assigns, including but not limited to Defendants Crew,

Rodriguez, Hardaway and McLean, whether in their individual or official capacities, or any of them,

or all of them, on account of such taxes, interest, or penalties.  In the event that any taxing authority

or any other federal, state, or local government, administrative agency, or court issues a final

determination that CUNY, the State of New York, and/or the City of New York, or any of their

agencies, departments, divisions, officers, employees, agents, attorneys, insurers, and assigns,

including but not limited to Defendants Crew, Rodriguez, Hardaway and McLean, whether in their

individual or official capacities, or any of them, or all of them, are liable for the failure of Plaintiff, or

her counsel to pay federal, state, or local income tax, or other taxes or withholdings with respect to

any portion of the payments referenced in Paragraph 3 above, or are liable for interest or penalties

related thereto, Plaintiff agrees to reimburse CUNY, the State of New York, and/or the City of New

York, or any of their agencies, departments, divisions, officers, employees, agents, attorneys, insurers, and assigns, including but not limited to Defendants Crew, Rodriguez, Hardaway and McLean, whether in their individual or official capacities, or any of them, or all of them, for such liability with respect to any portion of the payments referenced in Paragraph 3 above, so long as Plaintiff has been provided with notice of any such claim or proceeding promptly following receipt of notice of such claim or proceeding by CUNY, the State of New York, and/or the City of New York, or any of their agencies, departments, divisions, officers, employees, agents, attorneys, insurers, and assigns, including but not limited to Defendants Crew, Rodriguez, Hardaway and McLean, whether in their individual or official capacities, or any of them, or all of them.

8.     **Medicare Certification.**

Plaintiff represents and warrants that she is not a Medicare recipient and/or Medicare eligible, has never been on Medicare or Social Security Disability Insurance ("SSDI"), that no conditional payments have been made on her behalf by Medicare, and further that she does not expect to be Medicare eligible and/or a Medicare recipient within the next thirty (30) months following the date of this Settlement Agreement.

Plaintiff and Plaintiff's attorney acknowledge and understand that Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 ("MMSEA"), 42 U.S.C. § 1395y(b), mandates that the State of New York and the OAG report information to Medicare regarding settlements, judgments, awards or payments of any kind for the purpose of coordinating benefits for Medicare beneficiaries, and agree to deliver executed and notarized Affidavits of Medicare Eligibility Status, in the form annexed hereto as **Exhibit B** ("Medicare Affidavit"), to the OAG.

Plaintiff and Plaintiff's attorney acknowledge and understand that receipt of the Medicare Affidavit and any and all requested supporting documentation by the OAG is a prerequisite to payment by the State of New York of the settlement amounts referenced in Paragraph 3(a), and fall

within the category of "other requested documentation" and "papers required to effectuate the settlement" described in Paragraphs 4 and 5 of this Settlement Agreement.

       9.      **Responsibility of Plaintiff for Liens and Setoffs.**

Plaintiff acknowledges and agrees that neither Defendants nor the State of New York (including, but not limited to, any of their agencies, centers, schools, entities, offices, departments, subdivisions, officials, employees, or agents, whether in their individual or official capacities) shall be responsible for any liens, setoffs, deductions, or recoupments of any kind (including, but not limited to, any and all unemployment benefits, workers' compensation, tax, Medicare, Medicaid, or child support liens, or liens for attorneys' fees, costs, disbursements, or expenses) which may attach by operation of law or otherwise to any settlement payment amount referenced in this Settlement Agreement.  Plaintiff acknowledges and agrees that she shall have no claim, right, or cause of action against Defendants or the State of New York (including, but not limited to, any of their agencies, centers, schools, entities, departments, offices, subdivisions, officials, employees, or agents, whether in their individual or official capacities) on account of any such liens, setoffs, deductions, or recoupments.

      10.      **Liability of Plaintiff for Medicare Payments and/or Liens.**

Plaintiff agrees that Defendants, the State of New York, and their present and former agencies, entities, departments, offices, subdivisions, subsidiaries, administrators, principals, officers, employees, directors, members, trustees, agents, attorneys, insurers, heirs, and assigns, whether in their individual or official capacities, or any of them, or all of them, shall not be liable for any liens or past and/or future Medicare payments presently known or unknown in connection with the Action.  If conditional and/or future anticipated Medicare payments have not been satisfied, the State of New York reserves the right to issue a multi-party settlement check, naming Medicare as a payee or to issue a check to Medicare directly based on the Medicare Final Demand Letter.  Upon

receipt of all required documentation under Paragraph 2 (Stipulation and Order of Discontinuance With Prejudice), Paragraph 4 (State Approval of Payments), and Paragraph 8 (Medicare Certification), payments of the settlement amounts referenced in Paragraph 3(a) shall be made in accordance with the terms set forth herein.

11.  **Covenant Not to File Claim in Court of Claims.**

Plaintiff warrants and represents that, as of the date of this Settlement Agreement, she has not filed or sought permission to file with the New York Court of Claims a claim against the State of New York, Defendants, or their present and former agencies, entities, departments, offices, subdivisions, subsidiaries, administrators, principals, officers, employees, directors, members, trustees, agents, attorneys, insurers, heirs, and assigns, whether in their individual or official capacities, or any of them, or all of them, including but not limited to the Defendants, or any other person or entity based in whole or in part upon any of the acts, transactions, occurrences or omissions asserted in the Complaint in the Action, and further covenant and agree never to do so in the future.

12.  **General Release in Favor of Defendants.**

a.  For and in consideration of the agreement by the State of New York and CUNY to pay the monies referenced in Paragraph 3(a) of this Settlement Agreement, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, and except for the rights and obligations set forth in this Settlement Agreement, Plaintiff, on behalf of herself, her heirs, executors, administrators, successors, and assigns (collectively, "the Releasing Parties"), hereby release and forever discharge, the State of New York and CUNY, together with all of their present and former agencies, entities, departments, offices, subdivisions, subsidiaries, administrators, principals, officers, employees (including but not limited to Defendants Crew, Rodriguez, McLean and Hardaway), directors, members, trustees, agents, attorneys, insurers, whether in their individual

or official capacities, or any of them, or all of them (collectively, "the NYS Released Parties"), from

all manner of actions, injuries, proceedings, causes of action, grievances, suits, debts, obligations,

dues, sums of money, accounts, contracts, controversies, agreements, promises, damages, judgments,

claims, and demands whatsoever, direct or indirect, known or unknown, discovered or undiscovered,

that the Releasing Parties ever had, now have, or shall or may have in the future against some, any, or

all of the NYS Released Parties, for or by reason of any act, transaction, occurrence, omission, cause,

matter, or thing whatsoever up to and including the date of this Settlement Agreement, including but

not limited to: (a) any and all claims regarding or arising out of the acts, transactions, occurrences, or

omissions which are described, alleged, or contained in the Action, including without limitation the

Complaint in the Action; (b) any and all claims for attorneys' fees, costs, disbursements and all other

expenses incurred by or on behalf of Plaintiff in connection with the Action, and any other action or

proceeding, whether judicial, administrative or otherwise; (c) any and all claims regarding or arising

directly or indirectly from Plaintiff's association with any of the NYS Released Parties or the terms

and conditions of their association with any of the NYS Released Parties; (d) any and all claims of

access to courts, conspiracy, retaliation, or discrimination based upon disability, age, race, color,

national origin, ancestry, religion, marital status, sex, sexual harassment, sexual orientation, gender

identity, citizenship, military service, status, or medical condition, whether actual or perceived; (e) any

and all claims under federal, state, or local laws, statutes, constitutions, regulations, rules, ordinances,

or orders, including but not limited to claims under 42 U.S.C. §§ 1981-1988, Title VI, Title VII, Title

IX, the Equal Pay Act of 1963, 29 U.S.C. § 206(d), the Fair Labor Standards Act of 1938, 29 U.S.C. §

201 *et seq.*, the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634, the

Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, the Americans with Disabilities Act of 1990, 42

U.S.C. § 12101 *et seq.*, the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*, the New

York State Human Rights Law New York Executive Law § 296, *et seq.*, the New York City Human

Rights Law, New York City Administrative Code § 8-101, *et seq.*, the New York State Labor Law,

including but not limited to claims related to minimum wage, overtime, spread of hours,

commissions, tips or gratuities, and all claims arising under the Wage Theft Prevention Act and N.Y.

Labor Law §§ 190, 215, 651, 652, 740 and 741 *et seq.*, N.Y. Civil Service Law § 75-b, the United States

Constitution, the New York State Constitution, the New York City Charter, and any other federal,

state or local law; (f) any claims of retaliation for participation in a protected activity and/or engaging

in any activity protected under any federal, state, or local laws, statutes, constitutions, regulations,

rules, ordinances, or orders; (g) any and all claims for salary, bonuses, earnings, minimum wage pay,

overtime pay, severance pay, vacation pay, sick pay, incentive pay, clinical practice income, or other

compensation, or any non-vested retirement, pension, or savings plan or other benefits; (h) any and

all grievances pursuant to any applicable collective bargaining agreement; and (i) any and all other

claims, whether for moneys owed, damages (including but not limited to claims for equitable relief,

compensatory, punitive, or other damages), vocational services, breach of implied or express

contract, breach of promise, misrepresentation, negligence, fraud, estoppel, defamation, assault,

battery, infliction of emotional distress, tortious interference with contract, tortious interference with

business relations, tortious interference with prospective contractual relations, tortious interference

with prospective business relations, violation of public policy, wrongful or constructive discharge, or

any other tort, or any claim for costs, fees, or other expenses, including attorneys' fees, or any other

claims under federal, state, or local law relating to employment, education, vocational services,

discrimination, retaliation, retirement, or otherwise.  Except for the rights and obligations set forth in

this Settlement Agreement, this release also includes a waiver and release of any and all claims related

to allegations made before the EEOC, the DHR, and/or the New York City Commission on Human

Rights, as well as any and all claims against the State of New York, its agencies, departments, and

officials in the New York Court of Claims or any other forum, administrative or otherwise, related to

or arising from any transactions, acts, omissions, or occurrences up to and including the date of this

Settlement Agreement.  Plaintiff is not waiving or releasing any nonwaivable statutory protections.

Plaintiff is not waiving or releasing any claims under New York Military Laws; any claims under New

York Labor Law §§ 220 to 224; or any unemployment benefit rights under the New York

Unemployment Insurance Law.  Additionally, nothing in this release prohibits Plaintiff's right to

testify, assist, or participate in an investigation, hearing, or proceedings conducted by the EEOC.

        b.      For and in consideration of the agreement by the City of New York to pay the

monies referenced in Paragraph 3(b) of this Settlement Agreement, and other good and valuable

consideration, the sufficiency of which is hereby acknowledged, and except for the rights and

obligations set forth in this Settlement Agreement, the Releasing Parties hereby release and forever

discharge, the City of New York, together with all of its present and former agencies, entities,

departments, offices, subdivisions, subsidiaries, administrators, principals, officers, employees

(including but not limited to Defendant Cumbo), directors, members, trustees, agents, attorneys,

insurers, whether in their individual or official capacities, or any of them, or all of them (collectively,

"the NYC Released Parties"), from all manner of actions, injuries, proceedings, causes of action,

grievances, suits, debts, obligations, dues, sums of money, accounts, contracts, controversies,

agreements, promises, damages, judgments, claims, and demands whatsoever, direct or indirect,

known or unknown, discovered or undiscovered, that the Releasing Parties ever had, now have, or

shall or may have in the future against some, any, or all of the NYC Released Parties, for or by reason

of any act, transaction, occurrence, omission, cause, matter, or thing whatsoever up to and including

the date of this Settlement Agreement, including but not limited to: (a) any and all claims regarding or

arising out of the acts, transactions, occurrences, or omissions which are described, alleged, or

contained in the Action, including without limitation the Complaint in the Action; (b) any and all

claims for attorneys' fees, costs, disbursements and all other expenses incurred by or on behalf of

Plaintiff in connection with the Action, and any other action or proceeding, whether judicial, administrative or otherwise; (c) any and all claims regarding or arising directly or indirectly from Plaintiff's association with any of the NYC Released Parties or the terms and conditions of their association with any of the NYC Released Parties; (d) any and all claims of access to courts, conspiracy, retaliation, or discrimination based upon disability, age, race, color, national origin, ancestry, religion, marital status, sex, sexual harassment, sexual orientation, gender identity, citizenship, military service, status, or medical condition, whether actual or perceived; (e) any and all claims under federal, state, or local laws, statutes, constitutions, regulations, rules, ordinances, or orders, including but not limited to claims under 42 U.S.C. §§ 1981-1988, Title VI, Title VII, Title IX, the Equal Pay Act of 1963, 29 U.S.C. § 206(d), the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*, the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634, the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*, the New York State Human Rights Law New York Executive Law § 296, *et seq.*, the New York City Human Rights Law, New York City Administrative Code § 8-101, *et seq.*, the New York State Labor Law, including but not limited to claims related to minimum wage, overtime, spread of hours, commissions, tips or gratuities, and all claims arising under the Wage Theft Prevention Act and N.Y. Labor Law §§ 190, 215, 651, 652, 740 and 741 *et seq.*, N.Y. Civil Service Law § 75-b, the United States Constitution, the New York State Constitution, the New York City Charter, and any other federal, state or local law; (f) any claims of retaliation for participation in a protected activity and/or engaging in any activity protected under any federal, state, or local laws, statutes, constitutions, regulations, rules, ordinances, or orders; (g) any and all claims for salary, bonuses, earnings, minimum wage pay, overtime pay, severance pay, vacation pay, sick pay, incentive pay, clinical practice income, or other compensation, or any non-vested retirement, pension, or savings plan or other benefits; (h) any and all grievances pursuant to any

applicable collective bargaining agreement; and (i) any and all other claims, whether for moneys owed, damages (including but not limited to claims for equitable relief, compensatory, punitive, or other damages), vocational services, breach of implied or express contract, breach of promise, misrepresentation, negligence, fraud, estoppel, defamation, assault, battery, infliction of emotional distress, tortious interference with contract, tortious interference with business relations, tortious interference with prospective contractual relations, tortious interference with prospective business relations, violation of public policy, wrongful or constructive discharge, or any other tort, or any claim for costs, fees, or other expenses, including attorneys' fees, or any other claims under federal, state, or local law relating to employment, education, vocational services, discrimination, retaliation, retirement, or otherwise.  Except for the rights and obligations set forth in this Settlement Agreement, this release also includes a waiver and release of any and all claims related to allegations made before the EEOC, the DHR, and/or the New York City Commission on Human Rights, as well as any and all claims against the City of New York, its agencies, departments, and officials in the New York Court of Claims or any other forum, administrative or otherwise, related to or arising from any transactions, acts, omissions, or occurrences up to and including the date of this Settlement Agreement.  Plaintiff is not waiving or releasing any nonwaivable statutory protections.  Plaintiff is not waiving or releasing any claims under New York Military Laws; any claims under New York Labor Law §§ 220 to 224; or any unemployment benefit rights under the New York Unemployment Insurance Law.  Additionally, nothing in this release prohibits Plaintiff's right to testify, assist, or participate in an investigation, hearing, or proceedings conducted by the EEOC.

        c.      The Releasing Parties' release of the NYS Released Parties is not conditioned on the payment by NYC to Plaintiff of the amount set forth in Paragraph 3(b).

        d.      The Releasing Parties' release of the NYC Released Parties is not conditioned on the payment by the State of New York to Plaintiff of the amounts set forth in Paragraph 3(a).

       e.     The NYS Released Parties and the NYC Released Parties are the "Released Parties."

13.     **No Other Action or Proceeding Commenced.**

Other than the Action, Plaintiff represents that she has not commenced, maintained, or prosecuted any action, charge, complaint, grievance, or proceeding of any kind against the Released Parties, and/or any of their present and former agencies, entities, subdivisions, subsidiaries, administrators, principals, officers, employees, directors, members, trustees, agents, attorneys, insurers, heirs, and assigns, whether in their individual or official capacities, or any of them, or all of them, on their own behalves and/or on behalf of any other person and/or on behalf of or as a member of any alleged class of persons, that none of the foregoing is currently pending in any court or before any administrative or investigative body or agency, and acknowledge that this representation constitutes a material inducement for Defendants to enter into this Settlement Agreement.

14.     **No Other Attorney.**

Plaintiff represents and warrants that, other than the undersigned attorneys for Plaintiff, no attorney has a lien on the settlement proceeds in the Action or for services rendered to Plaintiff in the Action, or in any other action or judicial or administrative proceeding alleging any of the acts, transactions, occurrences, or omissions asserted in the Action, whether pursuant to the provisions of §§ 475 and 475-a of the New York Judiciary Law or any other state or federal law, or contract or otherwise.

15.     **No Prevailing Party.**

Neither the Plaintiff nor any Defendant shall be deemed a "prevailing party" for any purpose, including but not limited to any statutory or contractual claim based upon "prevailing party" status with respect to the Action.

16.     **Binding Effect on Successors and Assigns.**

The terms and conditions of this Settlement Agreement shall inure to the benefit of, and be binding upon, the successors and assigns of each party hereto.

17.     **Authority.**

Each signatory to this Settlement Agreement hereby represents and warrants that he, she, or it has the requisite authority to enter into this Settlement Agreement, and has not previously assigned or transferred any rights or interests with respect to the matters covered by this Settlement Agreement.

18.     **Voluntary Agreement.**

Plaintiff represents that she has thoroughly discussed all aspects of this Settlement Agreement (including the General Release set forth in Paragraph 12) with her attorneys, and Plaintiff represents that she has carefully read and fully understands all of the provisions of the Settlement Agreement.  Plaintiff represents that she executes and delivers the Settlement Agreement voluntarily after being fully informed of its terms, contents, and effect, and acknowledges that she understands its terms, contents, and effect.  Plaintiff acknowledges that she has been advised of her right to seek the advice of an attorney and that she is and has been represented by counsel of her own choosing before agreeing to any settlement or release, and no compromise or representation of any kind, other than as set forth or referred to herein, has been made to any party or any one acting on behalf of any party.  Plaintiff has executed the sworn waiver of conflicts of interest dated January 24, 2021, which is a material inducement for Defendants to enter into this Settlement Agreement.

19.     **Negotiated Agreement.**

The parties acknowledge that each party has participated and cooperated in the drafting and preparation of this Settlement Agreement.  The language in all parts of this Settlement Agreement shall be in all cases construed according to its fair meaning and not strictly for or against any party.

20.    **No Admission of Liability.**

Nothing contained herein shall constitute an admission by Defendants, the State of New York or the City of New York that they deprived Plaintiff of any right or failed to perform any duty under the constitutions, charters, statutes, rules, regulations, or other laws of the United States or, the State of New York, or the City of New York, or that any action or inaction by them was unlawful or wrongful.  It is understood and agreed that any actions taken or payments made pursuant to this Settlement Agreement are made solely to avoid the burdens and expense of protracted litigation; that this Settlement Agreement and the actions taken and payments made pursuant hereto are not to be construed as constituting any determination on the merits of any claims in this Action or dispute or as constituting any admission of wrongdoing or liability on the part of Defendants, the State of New York, the City of New York, or any of their present and former agencies, entities, departments, offices, subdivisions, subsidiaries, affiliates, administrators, principals, officers, employees, directors, members, trustees, shareholders, agents, attorneys, insurers, heirs and assigns, whether in their individual or official capacities, or any of them, or all of them, and that they expressly deny any wrongdoing or liability.  Nothing contained in this Settlement Agreement shall be deemed to constitute a policy, custom, or practice of Defendants, the State of New York, or the City of New York, or any of their offices, agencies, departments, divisions, subdivisions, officials, employees, or agents, whether in their individual or official capacities.

21.    **No Precedential Value.**

This Settlement Agreement shall not in any manner be construed as determinative of the issues or claims raised, or that could have been raised, in the Action, or any other action or proceeding.  This Settlement Agreement shall have no precedential value or effect whatsoever, and shall not be admissible in any action or proceeding as evidence or for any other purpose, except in

an action or proceeding to enforce this Settlement Agreement.  In addition, notwithstanding the provisions of any paragraph herein, this Settlement Agreement shall not bind or collaterally estop the Defendants, the State of New York or the City of New York, or any of their present and former agencies, entities, departments, offices, subdivisions, subsidiaries, affiliates, administrators, principals, officers, employees, directors, members, trustees, shareholders, agents, attorneys, insurers, heirs, and assigns, whether in their individual or official capacities, or any of them, or all of them, in any pending or future actions or proceedings in which the same or similar issues are raised, from defending any and all issues and claims raised in said actions or proceedings, or from advancing any defenses.

22. **Entire Agreement.**

This Settlement Agreement constitutes the entire agreement between the parties hereto pertaining to the subject matter hereof, and supersedes and embodies, merges and integrates all prior and current agreements and understandings of the parties hereto, whether written or oral, with respect to the subject matter of this Settlement Agreement, and may not be clarified, modified, changed, or amended except in a writing duly executed by the parties hereto or an authorized representative of the parties hereto.

23. **Governing Law.**

The terms of this Settlement Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts to be performed wholly within the State of New York, without regard to the conflict of laws provisions of New York law, except to the extent that federal law applies to the releases and waiver of federal claims pursuant to this Settlement Agreement.

24.     **Severability.**

With the exception of Paragraphs 1, 2, 3, 4, 8, 12, 13, and 15 of this Settlement Agreement, if any provision of this Settlement Agreement shall be held by a court of competent jurisdiction to be invalid, void, or unenforceable in whole or in part, such decision shall not invalidate the remaining portion or affect its validity.

25.     **Headings.**

The headings contained in this Settlement Agreement are for convenience of reference only and are not a material part of this Settlement Agreement.

26.     **Submission to the Court.**

Upon signatures by all parties and counsel for all parties, this Settlement Agreement and the Stipulation and Order of Discontinuance With Prejudice attached as Exhibit A shall be submitted without further notice to the Court to be "So Ordered."  Exhibit B shall be submitted to the Court in draft form or after redacting Plaintiff's personal information.

27.     **Counterparts.**

This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original and which, taken together, shall constitute one and the same instrument, and may be executed by facsimile or PDF signature and notary seal.

28.     **Acknowledgment of Full Understanding.**

Plaintiff acknowledges and agrees that she has fully read, understand, and voluntarily enters into this Settlement Agreement.  Plaintiff acknowledges and agrees that she has had an opportunity to ask questions and consult with an attorney of her choice before signing this Settlement Agreement.  Plaintiff further acknowledges that her signature below is a binding agreement that releases and/or waives claims, including claims that may be contingent or unknown against the Defendants and all Released Parties, including the State of New York and City of New York.

**IN WITNESS WHEREOF**, the parties hereto acknowledge that they have read this Settlement Agreement, and accept and agree to the provisions contained herein, and have each executed this Settlement Agreement to be effective on the day and date first above written.

**[Signatures Contained on Following Pages]**

_____

Sakia Fletcher, *Plaintiff*

STATE OF NEW YORK

COUNTY OF NEW YORK                    under E.O. 202.7

On ~~March~~ April _____, 2021, before me, the undersigned, a Notary Public in and for the State of

New York, personally appeared SAKIA FLETCHER, personally known to me or proved to me on

the basis of satisfactory evidence to be the individual whose name is subscribed to the within

instrument, and acknowledged to me that she executed the same in her capacity, and that by her

signature on the instrument, the individual, or the person upon behalf of which the individual acted,

executed the instrument.

NOTARY PUBLIC

COHEN & GREEN, P.L.L.C.
*Attorneys for Plaintiff*

By: _____

J. Remy Green, Esq.
1639 Centre Street, Suite 216
Ridgewood, NY 11385
(929) 886.9480; remy@femmelaw.com

THE CITY UNIVERSITY OF NEW YORK

By: _____

Hilary Klein, Esq.
Office of the General Counsel
205 East 42nd Street, 11th Floor
New York, New York 10017
(646) 664-9200; Hilary.Klein@cuny.edu

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant CUNY*

By:   *Jonathan A. Siegel*

Jonathan A. Siegel, Esq.
Assistant Attorney General
28 Liberty Street, New York, NY 10005
(212) 416-8888; Jonathan.Siegel@ag.ny.gov

JAMES E. JOHNSON
Corporation Counsel of the City of New York
*Attorney for Laurie Cumbo*

By: _____

Brian Krist, Esq.
Assistant Corporation Counsel
100 Church Street
New York, New York 10007
(212) 356-1000; bkrist@law.nyc.gov

SO ORDERED:

_____
United States District Judge

Dated:   April 2, 2021

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAKIA FLETCHER,

Plaintiff,

- against -

MEDGAR EVERS COLLEGE, CITY UNIVERSITY OF NEW
YORK, RUDOLPH CREW, in his capacity as President of
Medgar Evers College, FÉLIX V. MATOS RODRIGUEZ, in his
capacity as Chancellor of the City University of New York,
ALEXIS McLEAN, individually and in her capacity as Dean of
Medgar Evers College, JOHNATHON P. HARDAWAY,
individually and in his capacity as Chief Legal Officer for Medgar
Evers College, and COUNCILWOMAN LAURIE CUMBO,

Defendants.

20 Civ. 4163 (VEC) (SDA)

**STIPULATION AND ORDER
OF DISCONTINUANCE
WITH PREJUDICE**

**IT IS HEREBY STIPULATED AND AGREED**, by and between the undersigned
counsel that, pursuant to Fed. R. Civ. P. 41(a), the above-captioned action and all claims asserted
against Rudolph Crew, Félix V. Matos-Rodriguez, Alexis McLean, and Johnathon P. Hardaway in
the above-captioned action are voluntarily dismissed with prejudice and without payments,
attorneys' fees, costs, disbursements, or expenses to any of these parties as against the other.

COHEN & GREEN, P.L.L.C.
*Attorneys for Plaintiff*
By:

_____
J. Remy Green, Esq.
1639 Centre Street, Suite 216
Ridgewood, NY 11385
(929) 888.9480; remy@femmelaw.com

LAMB & BARNOSKY, LLP
*Attorneys for Crew and Hardaway*
By:

_____
Matthew J. Mehrort/Joshua Sprague, Esq.
534 Broadhollow Rd. Suite 210
Melville, New York 11747
(631) 694-2300; mjm@lambbarnosky.com

LETITIA JAMES
Attorney General, State of New York
*Attorney for Defendants CUNY and Matos-Rodriguez*
By:      *Jonathan A. Siegel*

_____
Jonathan A. Siegel, Assistant Attorney General
28 Liberty Street, New York, NY 10005
(212) 416-8888; Jonathan.Siegel@ag.ny.gov

JOSHUA PEPPER, ESQ.
*Attorney for Alexis McLean*
By:

_____
Joshua Pepper, Esq.
30 Wall Street, 8th floor
New York, New York 10005
212-804-5768; jpepper@jpepperesq.com

SO ORDERED:

_____
United State District Judge
Dated:      April 2, 2021

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAKIA FLETCHER,<br><br>        Plaintiff,<br><br>   - against -<br><br>MEDGAR EVERS COLLEGE, CITY UNIVERSITY OF NEW YORK, RUDOLPH CREW, in his capacity as President of Medgar Evers College, FÉLIX V. MATOS RODRIGUEZ, in his capacity as Chancellor of the City University of New York, ALEXIS McLEAN, individually and in her capacity as Dean of Medgar Evers College, JOHNATHON P. HARDAWAY, individually and in his capacity as Chief Legal Officer for Medgar Evers College, and COUNCILWOMAN LAURIE CUMBO,<br><br>        Defendants. | 20 Civ. 4163 (VEC) (SDA)<br><br>**PLAINTIFF'S AFFIDAVIT REGARDING MEDICARE**<br><br>(TO BE FILED WITHOUT PLAINTIFF'S PERSONAL INFORMATION) |

STATE OF NEW YORK  ) ss.:
COUNTY OF BRONX  )

    **SAKIA FLETCHER**, being duly sworn, says:

  1.  I am a plaintiff in the above-entitled action and I reside at
<sub>Redacted</sub>

_____ .

  2.  I am making this affidavit with full knowledge that the same will be relied upon by the State of New York, its agents, employees and representatives (collectively, "OAG") in connection with the settlement of this action against the MEDGAR EVERS COLLEGE, CITY UNIVERSITY OF NEW YORK, RUDOLPH CREW, FÉLIX V. MATOS RODRIGUEZ, ALEXIS McLEAN, JOHNATHON P. HARDAWAY and COUNCILWOMAN LAURIE CUMBO, specifically as it relates to the OAG's obligations as to Medicare compliance primarily pursuant to Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007 ("MMSEA") and the Medicare Secondary Payer Act ("MSP").  *[Note: A query will be / has been made pursuant to Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007, 42 US.C. 1395(B)(8) to verify your current Medicare status.]*

3.       I hereby acknowledge and understand that as mandated by CMS and promulgated by and through its rules and regulations including but not limited to the MMSEA and/or MSP, I am required to:

      a.       reimburse Medicare for *conditional payments* it has made from the settlement herein; and/or

      b.       utilize the settlement proceeds to pay for future medical expenses, when necessary.

4.       I further acknowledge that the information provided herein will be relied upon by defendants and OAG as true and accurate and, when applicable, will be used for reporting pursuant to Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007 and/or as deemed necessary and/or required by the defendants and OAG.

5.       I hereby agree to promptly provide the OAG with any and all information necessary and required for its reporting pursuant to Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007.

## PEDIGREE INFORMATION

6.        I have been known by (include all alias name(s), former name(s) and/or maiden name(s)) the following names: Sakia Fletcher.  I hereby acknowledge that I can be identified by this/these name(s) and all these names are indeed referring to me.

7.       I consent to OAG verifying my current Medicare eligibility for purposes of its compliance with Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007.  I affirm:

      a.       my social security number is _____ Redacted _____;
      b.       my date of birth is __Redacted _____; and
      c.       my gender is female.

## CURRENT MEDICARE ELIGIBILITY
*Initial and affirm applicable current Medicare eligibility status*

8.       As of the date of this affidavit:

a.      _SF____      I am not currently receiving nor have I ever received Medicare coverage and/or benefits;

**OR**

b.      _____      I am a Medicare beneficiary and my Medicare number [HIC #] is _____.  I am aware of my obligation to reimburse Medicare for payments and/or benefits that I received directly or indirectly from Medicare for medical expenses for injuries that were the subject of this action.  I understand that reimbursement directly to Medicare may be made from proceeds I receive from the settlement of this action; and

  i.      _____      Medicare has confirmed that no payment is due and owing from the total proceeds of the above-captioned litigation. *(Attach copy of Medicare's letter)*; or

  ii.      _____      Medicare has confirmed that it will accept the total amount of $_____ as full and final reimbursement of all Medicare payments made to date.  *(Attach copy of Medicare reimbursement letter)*.  In accordance with the attached Medicare letter, I consent to the payment of that sum directly from the total proceeds of the above-captioned litigation; or

  iii.      _____      I am awaiting a Final Demand letter or equivalent information from Medicare.  Upon my receipt of the necessary documentation, I will promptly provide it to Assistant Attorney General Jonathan A. Siegel, and to OAG's Medicare Compliance via email at Medicare.Compliance@ag.ny.gov.  I agree that no interest or penalty will be assessed or demanded by me or on my behalf against the OAG for any delay in payment pursuant to the terms and conditions of the settlement in the above-captioned litigation prior to OAG's receipt of any and all necessary documentation from me issued by Medicare (including but not limited to Medicare's Final Demand letter or equivalent correspondence).  In accordance with Medicare's Final Demand letter or its equivalent correspondence, I consent to the payment of that sum directly from the total proceeds of the above-captioned litigation.

**FUTURE MEDICARE ELIGIBILITY**
*Initial and affirm applicable future Medicare eligibility status*

9.    As of the date of this affidavit:
 a.      _SF____      I do not expect to be a Medicare recipient within 30 months of the date of this affidavit and the date of the settlement of the above-captioned litigation.  I affirm that I:
  i.      I have not applied for social security disability (SSDI);
  ii.      have not been denied SSDI and anticipating appealing that decision;
  iii.      am not in the process of appealing or re-filing for SSDI;
  iv.      am not 62.5 years or older; and
  v.      do not have End Stage Renal Disease (a qualifying condition for Medicare);

**OR**

b.　　✐_____　I am not current a Medicare beneficiary.  However, I anticipate that I will be Medicare eligible within 30 months of the date of this affidavit and the date of the settlement of the above-captioned litigation and

    i.　　✐_____　I do not require any future treatment for injuries that are the subject of this action.  The required certification(s) for the injuries alleged in the Complaint is attached.  The attached certification attests that there is no anticipated future treatment required for the injuries sustained in the within action; or

    ii.　　✐_____　I do require future treatment for the injuries that are the subject of this action.  In accordance with the attached Medicare Set-Aside Trust ("MSA"), I consent to the payment of $_____, payable to $_____ from the total proceeds of the above-captioned litigation. I affirm this sum will be used for the medical expenses relating to the injuries of this action;

**OR**

c.　　✐_____　I am currently a Medicare beneficiary and

    i.　　✐_____　I do not require any future treatment for injuries that are the subject of this personal injury action.  The required certification(s) for the injuries alleged in the Complaint is attached.  The attached certification attests that there is no anticipated future treatment required for the injuries sustained in the within action; or

    ii.　　✐_____　I do require future treatment for the injuries that are the subject of this action.  In accordance with the attached Medicare Set-Aside Trust ("MSA"), I consent to the payment of $_____, payable to $_____ from the total proceeds of the above-captioned litigation. I affirm this sum will be used for the medical expenses relating to the injuries of this action.

[Note:  These queries are made pursuant to Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, 42 U.S.C. 1395y(b)].

_____
**SAKIA FLETCHER**

Sworn to before me this _____ day of ~~March~~, 2021.
April

Notary Public